Johnny Lee SAUNDERS, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–84–0152–CR.

Court of Appeals of Texas,
Tyler.

Nov. 14, 1985.

Discretionary Review Refused
Nov. 19, 1986.

Dan Hurst, Tyler, for appellant.

Jim Crouch, Asst. Dist. Atty., Jack Skeen, Dist. Atty., Tyler, for appellee.

COLLEY, Justice.

Johnny Lee Saunders was convicted by a jury of retaliation.[1] The jury assessed punishment at ten years' confinement and a fine of $5,000. We note that although no notice of appeal is included in the record, the transcript does contain an order which we deem to be sufficient to show that notice of appeal was duly given. TEX. CODE CRIM.PROC.ANN. art. 44.08(d) (Vernon Supp.1985).

Saunders does not challenge the sufficiency of the evidence. He argues three grounds of error. He claims that the trial court erred in denying his right to counsel, in commenting adversely before the jury panel about his decision to represent himself at trial, and in failing to properly admonish him respecting the dangers and disadvantages of self-representation. We affirm the conviction.

A synopsis of the events and evidence germane to our disposition of the grounds of error follows.

---

Saunders was on parole at the time of the commission of the present offense. Shirley Jarred was his supervising parole officer. Jarred learned that Saunders had been charged with misdemeanor assault. She procured the issuance of a "blue" warrant for his arrest for parole violation. Following his arrest, Saunders telephoned Jarred and twice threatened to kill her because she refused to secure his immediate release from custody. Jarred's co-worker, parole officer Robert Dowd, overheard these threats.

The indictment against Saunders was returned on April 26, 1984. On arraignment, Saunders informed the trial judge that he wished to represent himself. The judge questioned Saunders regarding his age, education and training, and vigorously urged the indigent defendant to accept appointed counsel to represent him at trial. The judge carefully explained the disadvantages and dangers of self-representation to Saunders. Despite the judge's warnings, Saunders persisted in his demand to represent himself. The trial judge then struck an order appointing a licensed attorney, Tom Dunn, as stand-by counsel to advise and counsel with Saunders during the trial. The record reflects that Dunn was present throughout the trial. On June 1, 1984, the case was called again for arraignment and the indictment was read. Saunders entered a plea of not guilty. At that time, the trial judge again advised Saunders that he was taking a great risk in representing himself in the action. The judge also advised Saunders that he could receive up to ten years in the penitentiary if he were found guilty, and that his apparent ignorance of the law and criminal procedure could cause him to "sacrifice some legal rights." Once again, the trial judge asked Saunders if he still insisted on representing himself. Saunders' answer to that query was, "[w]ithout a shadow of a doubt." The case was called for trial on June 18, 1984. During the voir dire examination of the jury panel by the State, Saunders disrupted the proceedings by contemptuous, vulgar and disruptive behavior and by the use of obscene language directed towards the trial judge. Because of such disruptive conduct, the judge ordered Saunders bound and gagged. Saunders then rolled on the floor and continued making loud and disruptive

---

1. *See* TEX.PENAL CODE ANN. § 36.06 (Vernon 1974 and Vernon Supp.1985).

noises. As a last resort, the trial judge had Saunders removed from the courtroom until the State completed its examination of the jury panel. Saunders was then returned to the courtroom and permitted to examine the panel. Thereafter, Saunders was not physically restrained in any manner, was present throughout the remainder of the trial and conducted his own defense.

Our decisions on the grounds presented in this case are controlled by *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The core of the holding in *Faretta* is that a state may not force an accused in a criminal prosecution to accept the assistance of counsel because an accused has an independent right to self-representation secured by the Sixth and Fourteenth Amendments. This right is almost absolute,[2] and its free exercise by a defendant does not depend upon his power to waive the right to counsel. *Faretta,* 95 S.Ct. at 2533 n. 5. Under *Faretta,* the trial judge is required to admonish a defendant seeking to defend himself "of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" (Citations omitted.) 95 S.Ct. at 2541. Perhaps the clearest statement of *Faretta* as to the required character of an accused's choice of self-representation reads: "The record affirmatively shows that Faretta was literate, competent, and understanding, and that he was voluntarily exercising his *informed free will* [in choosing self-representation]." (Emphasis added.) *Faretta,* 95 S.Ct. at 2541.

Mr. Chief Justice Burger, in his dissent, considered the holding in *Faretta* to be "that an accused is absolutely entitled to dispense with a lawyer's help under all conditions." 95 S.Ct. at 2544; Mr. Justice Blackmun, dissenting, concluded that the holding of *Faretta* granted a defendant "an *absolute right to self-representation.*" (Emphasis added.) 95 S.Ct. at 2549–2550. Mr. Justice Blackmun also foretold with amazing accuracy some of the difficulties state courts would encounter in applying *Faretta's* rule. *See* 95 S.Ct. at 2549. Chief among the difficulties posed by Mr. Justice Blackmun was: "Since the right to assistance of counsel and the right to self-representation are mutually exclusive, how is the waiver of each right to be measured?" That question continues to plague our Court of Criminal Appeals. That court initially concluded that *Faretta* required that the record establish a valid waiver of the right to counsel before an accused may assert the newly discovered Sixth Amendment right to self-representation. E.g., *Goodman v. State,* 591 S.W.2d 498, 499–500 (Tex.Cr.App.1979); *Geeslin v. State,* 600 S.W.2d 309, 313 (Tex.Cr.App.1980). In *Martin v. State,* 630 S.W.2d 952, 953–956 (Tex.Cr.App.1982), authored by Judge Clinton, the Court of Criminal Appeals retreated from the positions taken by the court in *Goodman* and *Geeslin.* The *Martin* court seemingly settled on the rationale in *Faretta* that a defendant, duly admonished by the trial judge of the dangers and disadvantages of self-representation, must be permitted to defend himself if he "knew what he was doing and his choice [of self-representation] was made with eyes open." 630 S.W.2d at 955–956. A little over two years later, however, the Court of Criminal Appeals handed down *Blankenship v. State,* 673 S.W.2d 578 (Tex.Cr.App.1984). In *Blankenship,* Judge Miller, writing for the majority, initially appeared to accept the basic rationale of *Martin,* citing the same reasoning found in *Faretta* that had been discussed as controlling in *Martin.* *Blankenship,* 673 S.W.2d at 582–583. Judge Miller, while disclaiming that the court requires "formulaic questioning [by the trial judge[3]]....," before a defendant will be permitted to assert his right to defend himself, addresses the "active role" that trial judges must take "in assessing the defendant's waiver of counsel," and quotes *Von Moltke v. Gillies,* 332 U.S. 708, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948), which sets forth standards[4] for a judge's responsibili-

---

**2.** A trial judge may terminate self-representation if defendant engages in disruptive behavior and may appoint "stand-by counsel" to assist the defendant. *See Faretta,* 95 S.Ct. at 2541 n. 46; *see also McKaskle v. Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 954, 79 L.Ed.2d 122 (1984).

**3.** The Supreme Court in *Faretta* neither mandated nor suggested specific warnings or admoni-

tions to be given to an accused seeking self-representation.

**4.** "[A] judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To

ty to assure that a defendant's waiver of counsel "is understandably and wisely made." Nevertheless, the court in *Blankenship* concluded that "[i]n the end however, a defendant must be allowed to represent himself 'if he truly wants to do so.'" *Blankenship*, 673 S.W.2d at 584. Judge Clinton concurred in *Blankenship* and opined that *Faretta* has caused "conceptual difficulties" for the bench and bar, and went on to say, "Consequently, our initial focus after *Faretta*, was on the traditional 'waiver of counsel' requisites: this focus seemed to justify virtual wholesale denial of the *Faretta* right." *Blankenship*, 673 S.W.2d at 591.

Judge Clinton then cites *Martin*, 630 S.W.2d at 952, stating that by that decision the court recognized that the decisions in *Goodman*, 591 S.W.2d at 498, and *Geeslin*, 600 S.W.2d at 309, required admonitions to, and inquiries of, the defendant not contemplated by *Faretta*. Five months after *Blankenship* was delivered, Judge Clinton, writing for the majority in *Lambrecht v. State*, 681 S.W.2d 614 (Tex.Cr.App.1984), noted that in *Martin*, the court:

> Acknowledged the Supreme Court's reasoning that the independent right to self-representation does not arise from the accused's power to waive assistance of counsel and observed that prior decisions of this court which had iterated exacting 'requisites' for establishing a knowing waiver of counsel [citations omitted] had read *Faretta* incorrectly.... 681 S.W.2d at 615 n. 1.

In *Lambrecht*, the opinion fails to set forth sufficient facts for the reader to fully understand the disagreement between the majority and the dissenting judges, one of whom, strangely enough, was Judge Miller. Judge Miller's dissent in *Lambrecht*, 681 S.W.2d at 617, was based, at least in part, on his notion that "the majority opinion does not analyze the case under the rationale of the majority opinion" in *Blankenship*. Such a statement by the author of *Blankenship* suggests that Judge Clinton's

majority opinions in *Martin* and *Lambrecht* (both for the court en banc) and his concurring opinion in *Blankenship* cannot be squared with the rationale of the majority opinion in *Blankenship*. The confusion thus created regarding the standards to be applied to determine whether an accused is entitled to assert his separate and independent constitutional right of self-representation places the Courts of Appeal in this state on the horns of a perfect dilemma. Do we follow *Martin* and *Lambrecht*, or do we follow the *Blankenship/Geeslin* rule? Or, should we read *Faretta* as we understand it? Since, in our view, the Court of Criminal Appeals has not clearly rendered its interpretation of *Faretta*, we conclude our duty must be to apply the law of the land as we read *Faretta*.

■ The question presented is: May a trial judge deny a defendant's demand for self-representation because the record before him does not establish a valid waiver of his right to counsel? In our opinion, *Faretta* says he may not. A defendant's right to defend himself is an independent right under the Sixth and Fourteenth Amendments and does not require him to first knowingly and intelligently waive his right to assistance of counsel. In our view, *Faretta* says that when an accused seeks self-representation, and the record establishes that he has been adequately admonished and warned by the trial judge of the dangers and disadvantages of self-representation, he is entitled to assert the right.[5]

The standard to be followed under *Faretta* is that the choice of self-representation must be made by the accused "with his eyes open," and that the record must affirmatively show "[that the accused] was literate, [mentally] competent, and understanding, and that he was voluntarily exercising his *informed free will*." (Emphasis added.) *Faretta*, 95 S.Ct. at 2541.

It is axiomatic that this right secured by the Sixth and Fourteenth Amendments is available to all. An accused cannot be

---

be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an ac-

cused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered." *Von Moltke*, 68 S.Ct. at 323.

5. See footnote 2.

denied his right to self-representation under *Faretta* because he is undereducated or has less than average intelligence. Indeed, it is true, as stated by Mr. Justice Blackmun in his dissenting opinion, even a "fool" now has a "constitutional" right to represent himself. *Faretta*, 95 S.Ct. at 2550.

■ We have carefully reviewed the lucid admonitions and persistent questioning given and propounded by the trial judge to Saunders in his attempt to dissuade him from representing himself in this action. We hold that the record shows that Saunders was properly permitted to assert his right to self-representation. Saunders argues under his third ground that *Blankenship*, 673 S.W.2d at 583, requires the record show that an accused seeking to assert his right of self-representation must be advised of the "statutory range of punishment for the offense charged," and since Saunders was not so advised, the trial judge erroneously permitted Saunders to manage his own defense. We disagree for two reasons. The record does not support the allegation made by Saunders, and *Faretta* makes no such specific requirement. Ground three is overruled.

Having concluded that Saunders was entitled to exercise his right of self-representation, we consider the first ground of error whereby Saunders alleged that he was denied his right to counsel during a portion of the State's voir dire examination of the jury, mandating a reversal of the cause. Saunders argues that while his blatantly disruptive conduct might have justified the termination of his right to defend himself and the appointment of stand-by counsel to assume the management of his defense, his removal from the courtroom without appointing stand-by counsel, Tom Dunn, to take over Saunders' defense, deprived Saunders of his right to counsel at a critical stage of his trial. Saunders does not claim that stand-by counsel was not present, and we presume that he was present during voir dire examination of the panel. Saunders was returned to the courtroom at the conclusion of the State's examination of the panel, and was permitted to address the panel. Thereafter, Saunders participated in the individual voir dire examination of three prospective jurors, two of whom were successfully challenged for cause by the State, and one of whom was successfully

challenged for cause by Saunders. The State argues that the trial court's action in removing Saunders from the courtroom was proper under *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). Saunders claims error under the doctrine set forth in *Eason v. State*, 563 S.W.2d 945, 947 (Tex.Cr.App.1972).

■ In the case before us, Saunders was representing himself, and hence his removal from the courtroom during a portion of the State's voir dire examination, in fact, removed both the defendant and "his counsel." Under *Illinois v. Allen, supra,* the removal of *defendant* Saunders at such stage of the trial was not error under the confrontation clause of the Sixth Amendment, given Saunders' disruptive behavior. But the question remains, Was it error of Constitutional dimension for the trial court to remove Saunders without expressly terminating his right of self-representation based on his disruptive behavior and directing stand-by counsel to assume the management of Saunders' defense? Under such facts, the court's action left Saunders without counsel authorized to conduct his defense. We hold that this question must be answered in the affirmative. *Faretta* expressly requires that stand-by counsel be available to represent the accused in the event that termination of the defendant's right of self-representation is necessary.[6] The action of the trial judge in this case in excluding Saunders from the courtroom must be viewed as a justifiable termination, at least temporarily, of Saunders' right of self-representation. Therefore, the trial court should have directed stand-by counsel to conduct the voir dire examination of the jury panel. Although the error is one of Constitutional dimension, we conclude it was harmless beyond a reasonable doubt. A close reading of the State's voir dire examination conducted in the absence of Saunders, reveals that it was essentially a general discourse on the law governing the trial of criminal cases. In fact, some of the statements made by the prosecutor to the jury panel were beneficial to Saunders, e.g., his right to presumption of innocence, the State's burden of proof, and the rights of a defendant to testify or refuse to testify as he sees fit and the consequences thereof. Additionally, stand-by counsel was present and heard the voir dire and

6. *Faretta*, 95 S.Ct. at 2541.

was available for consultation with Saunders after Saunders was returned into the courtroom. Saunders was permitted to resume his pro se defense after he was returned to the courtroom. Saunders makes no specific complaint of harm done to his defense because of his absence during the State's voir dire examination. Saunders testified at the guilt/innocence stage, and in effect, made a judicial confession that he committed the offense charged against him in the indictment. The State's evidence of his guilt is also overwhelming. Based on our review of the entire record in this cause, we conclude that the Constitutional error is harmless beyond a reasonable doubt; and that Saunders' removal from the courtroom by the court did not amount to such a denial of his right to counsel and assistance of counsel that requires a reversal of the judgment below. *See Wood v. State,* 573 S.W.2d 207, 219 (Tex.Cr.App. 1978). *Eason* is easily distinguishable on these facts, and thus is inapplicable here.

In ground two, Saunders insists that the opening remarks of the trial judge to the jury panel were demeaning in character and tended to ridicule his decision to represent himself in this action. The trial judge, after introducing Saunders to the panel, advised the panel that Saunders had elected to defend himself as he was constitutionally entitled to do; and, that stand-by counsel had been appointed to advise Saunders should he desire advice. In short, Judge Carroll described the role of stand-by counsel and the decision of Saunders for self-representation. In addition, the trial court stated to the panel:

I have advised Mr. Saunders that in so doing, in insisting upon representing himself, that he has placed himself at a decided disadvantage. I have advised Mr. Saunders, as I have always advised persons who have come before me and asked or insisted upon their rights to represent themselves, that the course of action they have taken is dangerous, and is ill-advised, and that they should not do so. I have used, in admonishing Mr. Saunders, the example which I always use in those instances, and that is, that the Constitution probably gives oneself the right to do brain surgery upon yourself, if you elected to do so, but that it is not sound medical practice to attempt to perform brain surgery on oneself. And it is not sound legal practice to attempt—

for someone who is unskilled in the law, to attempt to represent themselves before a Court or a jury. I'm telling you as a prospective jury panel this because I must hold—under those circumstances, I must hold Mr. Saunders to exactly the same standards that I would hold him to if he were represented by a lawyer. That when he speaks from off the witness stand, he speaks not as a Defendant but as a lawyer, or attorney. And the jury in this case must likewise be able to separate their treatment of Mr. Saunders as attorney on the one hand and as a Defendant in the other hand, on the other hand.

In answer to Saunders' argument under this ground, the State points out appropriately that the trial judge, after having so advised the jury of Saunders' decision to defend himself, then asked the panel generally:

The next question I have to ask you is a difficult one. The reason it's difficult is because Mr. Saunders in this matter is obviously going to be at a disadvantage in attempting to act as his own lawyer. That disadvantage has been pointed out to him time and time again by me. But when he elects to do so, he has that absolute right, and I cannot prevent him from doing so. I cannot make him take a lawyer, and neither can you. Neither can the members of this jury panel require him to allow a lawyer to handle this case for him. Is there anyone on the jury panel who believes that you would allow any feeling that you might have in that regard to influence your verdict in this case, either upon the guilt or innocence, or upon the issue of punishment? If so, would you please hold up your hand.

It is obvious that the trial judge, out of respect for Saunders' Sixth Amendment right of self-representation, made a cogent effort to eliminate from the jury panel any prospective jurors who might harbor prejudice against Saunders' exercise of his right of self-representation. We hold that the trial judge's remarks did not ridicule, or in any manner impugn Saunders' choice of self-representation. Therefore no error was committed by the trial judge in making such remarks. *Hawkins v. State,* 613 S.W.2d 720 (Tex.Cr.App.1981), cited by Saunders in support of this ground is inap-

posite. In *Hawkins*, the court held that "it is error of constitutional dimension for the prosecutor or a witness to comment adversely concerning the mental attitude of the accused as he is exercising that right [of self-representation]." *Id.* at 729. In other words, *Hawkins* condemns deprecation or ridicule of a defendant's performance as his own attorney, or his motivation for representing himself, and in effect, holds that such conduct constitutes an impermissible limitation on the assertion of the right of self-representation guaranteed by the Sixth and Fourteenth Amendments. Certainly this rule established by *Hawkins* would apply if the trial judge, rather than the prosecutor or a witness, was guilty of the same conduct. The trial judge's remarks in this case were calculated to clarify and secure the right of Saunders to conduct his own defense unsullied by any uninformed prejudice on the part of any trial juror. Ground two is overruled.

The judgment is affirmed.