Affirmed and Opinion filed February 7, 2006















Affirmed
and Opinion filed February 7, 2006.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-01057-CR

____________

 

KENNETH GANTHER, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 178th
District Court

Harris County,
Texas

Trial Court Cause No. 959157

 



 

O P I N I O N

A jury found appellant Kenneth Ganther
guilty of robbery,[1]
found two prior felony enhancements true, and assessed his punishment at
confinement for life in the Texas Department of Criminal Justice, Institutional
Division.  In four issues, appellant
challenges the validity of his waiver of his right to representation, denial of
his request for Aco-counsel,@  and the trial court=s comments during
voir dire.  We affirm.








Procedural
Background[2]

According to appellant, he requested
self-representation as early as the probable cause hearing on August 15, 2003,
the day after his arrest.  Later the same
month, however, appellant requested counsel, and the trial court appointed Kirk
J. Oncken to represent appellant.  In
late October, the case was set for a November 12, 2003 bench conference to
discuss self-representation.  There is no
reporter=s record of that
conference.

In mid-January, 2004, Oncken filed a
series of procedural motions, and appellant filed a pro se motion for the court
to direct Oncken to file requested subpoenas. 
In that motion, appellant complained counsel was Ahindering the
preparations needed for trial where defendant faces 25 years to 99 years if
convicted.@ 
Appellant also complained counsel had failed to visit appellant to
discuss his case and spent only twelve minutes with appellant at his four
previous court appearances.  The record
contains three additional motions filed in January 2004, over Oncken=s name, but
unsigned.

[AH1]           On February 9, 2004, appellant filed a
letter with the court and a motion to proceed pro se because of Acourt-appointed
counsel=s deficient
performance.@[3]  In the letter, appellant stated, AI understand the
pitfalls of pro-se representation, but in my case I=m at a much
greater advantage.  I understand that I
will be held to the same standards as an attorney and I would not expect
anything less.@  In
the motion, appellant referred to an October 30, 2003 hearing in which the
trial court rejected appellant=s request to have
court-appointed counsel re-appointed as appellant=s co-counsel so
appellant could conduct his own defense. 
Appellant implied he had agreed to let counsel continue to represent him
based on counsel=s guarantees he would have subpoenas
filed; appellant complained of counsel=s subsequent lack
of action.








The trial court heard the motion on
February 16, 2004.  Appellant complained
that his hired investigator had repeatedly attempted to contact Oncken, but had
been unsuccessful.  Oncken responded that
he and the court-appointed investigator had extensively investigated appellant=s case and talked
to everyone appellant had requested. 
Oncken agreed a private attorney=s investigator had
approached him and he had shared information with the investigator, but Oncken
was unaware appellant had retained any other lawyer.  Oncken also told the court appellant had
drafted several motions filed with the court demonstrating Aan understanding
of the law@ and showing appellant was Apretty well versed
in criminal law and is competent to . . 
handle his own legal matters.@  The trial court denied appellant=s motion to
proceed pro se.  The same day, Oncken
filed several more signed motions.

On March 5, 2004, appellant wrote the
court, Ain order that the
record on [his] motion to proceed in pro se . . . will be accurately
transcribed with the true facts for the Appellate Courts.@  He observed, among other matters, AEvery motion that
has been filed I drafted them and Mr. Oncken signed off on them.  The same with the subpoenas that have been
filed.@

On April 8, 2004, appellant filed a pro se
ANotice Concerning
all Motions and Pleadings.@  Appellant stated, AI hereby give
notice to the District Court and for the Appellate Court=s Record that each
motion and pleading that has been filed with the court that bears the name and
signature of Kirk Oncken, Defendant=s court appointed
counsel was prepared by Defendant, Kevin Ganther and given to court appointed
counsel to sign and file.@ 
The record contains several motions filed the same day, one pro se, the
others signed by counsel.[4]








On May 7, 2004, the trial court again
considered the issue of appellant=s
representation.  Oncken informed the
court appellant had submitted information to the Texas State Bar, the Bar had
filed a grievance against Oncken as a result, and Oncken was requesting he be
allowed to withdraw from the case.  The
court asked appellant whether he still wanted to represent himself.  Appellant responded, AI can, sir, Yes,
sir.@  The following dialogue ensued:

THE COURT:  Do
you still want to represent yourself?

THE DEFENDANT: 
I can.

THE COURT: Can you afford to hire a lawyer?

THE DEFENDANT: No, sir.

THE COURT:  Do
you understand that if you cannot afford to hire a lawyer, you have the
absolute right to ask me to appoint a lawyer to represent you?

THE DEFENDANT: 
Yes, sir.

THE COURT:  And
do you want to give up that right - -

THE DEFENDANT: 
Yes, sir.  Yes, sir.

THE COURT:   - -
and represent yourself?

THE DEFENDANT: 
If you allow Mr. Oncken to withdraw, yes sir.  Because what has happened Your Honor, since
the beginning, since August 15th, when I first appeared in your court - -

THE COURT: 
No.  I=m going to allow Mr. Oncken to withdraw because of the
grievance filed against him.  Now, if you
want me to appoint another lawyer to represent you, I will do that.

THE DEFENDANT: 
No, sir.  No, sir.  I don=t want
another lawyer.

THE COURT:  You
want to represent yourself?

THE DEFENDANT: 
Yes.  I=ll go ahead and represent myself.

THE COURT:  You
want to give up your right for me to appoint a lawyer as guaranteed to you by
the 6th Amendment?

THE DEFENDANT: 
Yes, sir.

THE COURT:  You
understand that by doing so, Mr. Ganther, if you represent yourself in this
trial, since you do not have a law degree - - is that correct?

THE DEFENDANT: 
No, I don=t.

THE COURT:  Have
not been to college?

THE DEFENDANT: 
Yes, sir.

THE COURT:  Have
been to college?

THE DEFENDANT: 
Yes, sir.








THE COURT:  And
you graduated?

THE DEFENDANT: 
Yes, sir.

THE COURT:  But
you have not had any legal training?

THE DEFENDANT: 
Um, not actually, no sir.

THE COURT: Huh?

THE DEFENDANT: Not actually, no, sir.

THE COURT:  Not
any formal legal training?

THE DEFENDANT: 
Yes, sir.

THE COURT:  But
you do understand if I allow you represent yourself, you=ll be held to the same standards of conduct during
trial that a lawyer would?  You
understand that?

THE DEFENDANT: 
Yes, sir, I do understand that.

THE COURT:  You
don=t get anymore advantages or breaks or leeway because
you=re not a lawyer if you choose to represent yourself.

THE DEFENDANT:  
Yes, sir.

THE COURT:  I
mean, any objections you make in your proceedings, if the objection is not
proper, it will be denied.   Anything
that you fail to ask for properly, it=s
denied.  Or if you fail to ask for it, or
it does not get done, you have to suffer the consequences of that.  Do you understand that?

THE DEFENDANT: 
Yes, sir.  I=m well aware.

THE COURT: And, you know, you will have to - - you
will be expected to pick this jury on your own and follow the rules of the voir
dire process.  Do you understand that?

THE DEFENDANT: 
Yes, sir.

THE COURT:  You
have to follow the same rules and procedure regarding presentation of evidence,
questioning, cross-examination of witnesses. 
You understand that?

THE DEFENDANT: 
Yes, sir.

THE COURT:  And
if you don=t do it properly and the State objects, I sustain the
objection, then that may work for or against you.  Do you understand that?

THE DEFENDANT: 
Yes, sir.








THE COURT:  So,
understanding all the risks involved in representing yourself, are you still
absolutely certain that you want to give up your right to have me appoint a
lawyer to represent you and allow you to represent yourself?

THE DEFENDANT: 
Yes, sir.  Unless there would be
standby counsel?

THE COURT:  Huh?

THE DEFENDANT: 
Unless there could be standby counsel.

THE COURT:  What
do you mean unless there can be standby counsel?  Nobody - - you want to represent yourself?

THE DEFENDANT: 
Yes, sir, I will.

THE COURT: 
Right.  I=m not going to have standby counsel.

THE DEFENDANT: 
That=s fine, Your Honor.

THE COURT:  Huh?

THE DEFENDANT: 
That=s fine, Judge.

THE COURT:  All
right.  So, it appears to me you=ve spent a lot of time in the law library, haven=t you?

THE DEFENDANT: 
Some, some.  Yes, sir.

THE COURT:  You=ve been reading lots of the law books?

THE DEFENDANT: 
Yes, sir.

THE COURT:  You=ve written out many of your own motions?

THE DEFENDANT: 
Right.

THE COURT:  And
so, are you  - - are you absolutely
confident in your mind you=ve acquainted yourself enough with the legal process
that you want to represent yourself?

THE DEFENDANT: 
Yes, sir.

THE COURT: All right. 
I will allow Mr. Oncken to withdraw. 
I=ll allow you to represent yourself.

 








The case proceeded to trial before a jury
on October 11, 2004.  During voir dire,
the trial court informed the venire panel that appellant was exercising his
sixth amendment right to represent himself. 
The trial court initially explained, AThere are certain
hoops that I=ve got to jump through to make sure that I
allow Mr. Ganther to represent himself, and I=ve questioned him
repeatedly on a number of occasions at length and explained to him all the
pitfalls about representing himself at trial.@  The trial court then indicated appellant
understood he was required to conduct himself like a lawyer.  Several members of  the venire panel asked questions about
appellant=s choice, and in the course of answering,
the trial court stated, if at any time appellant asked for an attorney to sit
with him and be available to answer questions, the trial court would grant that
request, but appellant could not have a lawyer to try the case with him.  The trial court also explained that appellant
had to establish to the court that he understood the risk of self-representation,
then added, AYou know, there=s a saying around
the courthouse that the lawyer who defends himself has a fool for a client, you
know, but he has the right to do that.@  Finally, the trial court attempted to
ascertain whether the panel members would conclude appellant was guilty because
he was defending himself or, conversely, whether they might feel sympathetic
toward him and hesitate to convict:  A[S]ome people may
say, well, gee, I wouldn=t defend myself . . .maybe that means he
is guilty. . . . [T]he flip-side is this: 
There=s the risk that people will think gee,
poor Mr. Ganther. . . .  I feel kind of
sympathetic towards him.@  

During voir dire, the trial court also
explained the effect of prior felony convictions on the punishment range for
robbery:

What I want to know now is this: Is
there anybody on the jury panel who could not consider the entire range of
punishment for a person found guilty of the offense of robbery from a minimum
of two years in prison up to the maximum 20 years in prison, or if he has one
prior conviction from a minimum of 5 years in prison, a maximum up to 99 years
in prison or life.  If he has two prior,
minimum 25 years in prison up to a maximum of 99 years in prison or life in
prison?

 

Appellant did not object to the trial
court=s comments.

After the State rested and before putting
on his evidence, appellant raised the issue of having a lawyer as Aco-counsel.@  The record contains the following colloquy:

THE DEFENDANT:  We were supposed to take up a couple of
issues this morning.

THE COURT:  You=re right.  What were
they?

THE DEFENDANT:  Um, the attorney issue and also - - 








THE COURT:  Now, where is this attorney? I told you that
you could have an attorney come sit with you as a standby attorney.

THE DEFENDANT:  Yes, sir. 
But that=s - - remember I wanted to get that
on the record?

THE COURT:  Right.

THE DEFENDANT: Yes, sir.

THE COURT:  Well, you can have a lawyer come sit with you
as a standby lawyer, but I=m not going to allow you to have a lawyer come substitute
in and start acting as your lawyer.

THE DEFENDANT:  No, he wasn=t going to substitute, I was
talking about as co-counsel.

THE COURT:  Right. 
I=ll not allow him to participate as
co-counsel with you and actively participate in the trial by asking questions
and making arguments.

THE DEFENDANT:  That=s what I wanted to get on the record.

THE COURT:  Right.

THE DEFENDANT:  Yes, sir.

THE COURT:  Is he even here?

THE DEFENDANT:  No, sir.

THE COURT: All right.

THE DEFENDANT:  Because we were supposed to get a ruling
before we started the trial on that issue and we didn=t.

THE COURT:  So, where is he?

THE DEFENDANT:  Um, I haven=t contacted him because we didn=t get a ruling.

THE COURT:  All right. 
Well, I=m telling you if you want to have
him come, he certainly is welcome.

THE DEFENDANT:  No, sir. 
I just wanted to get a ruling as far as him being co-counsel, not
standby counsel.

THE COURT:  Right. 
I=m not going to allow you to have a
lawyer come in here and participate as co-counsel and actively participate in
the trial.

THE DEFENDANT:  Yes, sir.

 








The jury found appellant guilty of robbery
as charged in the indictment, found the two prior felony enhancements
true,  and assessed his punishment at
confinement for life.

Discussion

I.  Point
of Error One: Waiver of Right to Representation

In his first point of error, appellant
argues the trial court did not obtain a valid waiver of his right to
counsel.  In all criminal prosecutions in
which an accused may be punished by imprisonment, the accused has the right to
assistance of counsel for his defense. 
U.S. Const. amends. VI, XIV; Tex.
Code Crim. P. Ann. art. 1.051 (Vernon 2005); see Faretta v.
California, 422 U.S. 806, 807, 95 S. Ct. 2525, 2527 (1975); Collier v.
State, 959 S.W.2d 621, 625 (Tex. Crim. App. 1997).  In lieu of being represented by counsel,
however, a defendant also has a Sixth Amendment right to prosecute his own
legal defense.  Faretta, 422 U.S.
at 818B21, 95 S. Ct. at
2532B34; see also
Tex. Const. art I, ' 10; Tex. Code Crim. P. Ann. art. 1.05
(Vernon 2005).  For the decision to
represent one=s self to be constitutionally effective, a
defendant must make the decision (1) competently, (2) knowingly and
intelligently, and (3) voluntarily.  Moore
v. State, 999 S.W.2d 385, 396 (Tex. Crim. App. 1999).  In the present case, appellant argues he did
not make his decision knowingly and intelligently.








A decision to waive counsel and proceed
pro se is made Aknowingly and intelligently@ if it is made
with a full understanding of the right to counsel, which is being abandoned, as
well as the dangers and disadvantages of self‑representation.  Id. at 396 n. 5.  If such factors are not otherwise apparent
from the record, a trial court=s inquiry
regarding the accused=s waiver of counsel should center on his
background, age, experience, and education. 
See Johnson v. State, 760 S.W.2d 277, 278 (Tex. Crim. App. 1988).
The accused should be aware there are technical rules of evidence and
procedure, and he will not be granted any special consideration solely because
he asserted his pro se rights.  Id.
at 279.  The trial court however, need
not follow a formulaic questioning or particular script in ascertaining the
knowing and voluntary nature of an accused=s waiver of
counsel.  See Burgess v. State,
816 S.W.2d 424, 428 (Tex. Crim. App. 1991).

In the present case, appellant had
repeatedly asserted his desire to represent himself.  The trial court permitted appellant to do so
only after (1) informing him he had an absolute right to appointed counsel, he
would be held to the same standards as an attorney, he would have to suffer the
consequences of failing to make an objection or making an improper one,  and (2) determining appellant had graduated
from college, had spent time in the law library and had been reading law books,
had written many of his own motions, understood and was aware he would be held
to the same standards as an attorney, and was absolutely confident he had
acquainted himself enough with the legal process to represent himself.  The trial court=s inquiry compares
favorably to that held to be adequate in Collier.  See 959 S.W.2d at 626.[5]  

We overrule appellant=s first point of
error.

II. 
Point of Error Two: Denial of Appellant=s Request for ACo-counsel@

In his second point of error, appellant
argues the trial court Acommitted reversible error@ when it denied
his mid-trial request for co-counsel. 
From the exchange that appears of record as well as the trial court=s comments during
voir dire, it appears the trial court had modified its pre-trial position and
was willing to permit appellant to have stand-by counsel.  Appellant, however, insisted on co-counsel.








We view appellant=s request for Aco-counsel@ as a request for
hybrid representation, or partially pro se and partially by counsel.  See Landers v. State, 550 S.W.2d 272,
279B80 (Tex. Crim.
App. 1977).  Although a trial court has
discretion to permit hybrid representation, 
there is no absolute right to such representation.  Hathorn v. State, 848 S.W.2d 101, 123
n.12 (Tex. Crim. App. 1993); Scarbrough v. State, 777 S.W.2d 83, 92
(Tex. Crim. App. 1989).  A trial court
abuses its discretion when its decision lies outside of the zone of reasonable
disagreement.  See Montgomery v. State,
810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (stating same in context of
establishing abuse-of-discretion standard of review for evidentiary rulings).

On the record before us, we cannot say the
trial court abused its discretion in denying appellant=s request for
hybrid representation.[6]  The court of criminal appeals has opined that
hybrid representation has great potential for chaos.  See Landers, 550 S.W.2d at 280.  During voir dire in the present case, the trial
court had explained to the venire panel that appellant would be representing
himself.  The trial court had also
stated,

At any time if Mr. Ganther asked me
to appoint a lawyer to sit with him and to be available to answer questions
that he has during trial, absolutely. 
And what the law does not allow is this: 
It does not allow what we call hybrid representation.  It does not allow Mr. Ganther to do part of
the trial and it doesn=t allow the lawyer to do part of
the trial.  It=s either one or the other.  You either do all or none.

 

The trial court
could perhaps more accurately have explained that it was the court that would
not allow hybrid representation. 
Nevertheless, after explaining hybrid representation was not allowed,
the trial court did not act outside the zone of reasonable disagreement by
remaining consistent with the procedure it had explained to the venire panel.

We overrule
appellant=s second point of error.

III.  Points of Error Three and Four: The Trial
Court=s Comments during Voir Dire








In his third point
of error, appellant argues certain comments by the trial court regarding his
decision to represent himself violated his due process rights.  Specifically, he emphasizes the following
comments, which occurred during an extensive interchange between the court and
the venire panel:

$        There
are certain hoops that I=ve got to jump through to make sure
that I allow Mr. Ganther to represent himself.

$        Whoever
you and I think the best lawyer in town is, he does not come down here and want
to get appointed to criminal cases for free, at what little I can pay him
today.  So, you know, he is appointed a
lawyer from the lawyers who, you know, are qualified, meet our qualifications
to get court appointments for felony cases, very experienced lawyers, but
certainly not the best lawyer in town.

$        At
any time if Mr. Ganther asked me to appoint a lawyer to sit with him and be
available to answer questions that he has during trial, absolutely [he may have
stand-by counsel]. . . .  He can certainly
change his mind about wanting to have a lawyer be available to assist him in
conducting the trial, but not to try the case along with him.

$        You
know, there=s a saying around the courthouse
that the lawyer who defends himself has a fool for a client.

$        There=s the risk that people will think,
gee, poor Mr. Ganther. . . .  I don=t want to convict a guy of a crime
that I believe beyond a reasonable doubt he is guilty of because the poor guy
defended himself, so I don=t want to convict him.[7]

 

In his fourth
point of error, appellant argues the trial court committed reversible error by
informing the jury he had two prior convictions.  Specifically, he emphasizes the following
comments:








$        [W]here
it is shown during a punishment phase of a criminal trial that an individual
has one prior felon criminal conviction, the range of punishment is increased
from . . . 20 years up to 99 years in prison or life in prison. . . .  [O]ur law has provided that where it is shown
in a punishment phase of trial an individual has two prior felony convictions,
the range of punishment is increased from a minimum of 5 years in prison up to
25 years in prison up to 99 years or life in prison.

$        [T]here
are some individuals that are found guilty of aggravated robbery who have one
prior felony conviction.

$        [O]r if he has one prior conviction . .
. . If he has two prior. . . .

$        [O]r one prior conviction . . .  with two prior convictions. . . .[8]

 

Appellant did not
object to any of the trial court=s comments.  To preserve error, a defendant  must make a timely and specific
objection.  Tex. R. App. P. 33.1; see Villareal v. State, 116
S.W.3d 74, 85 (Tex. App.CHouston [14th Dist. 2001, no pet.).  Absent an objection, a defendant waives error
unless the error is fundamentalCthat is, the error
creates egregious harm.  See Villareal,
116 S.W.3d at 85; see also Beltran v. State, 99 S.W.3d 807, 811 (Tex.
App.CHouston [14th
Dist. 2003, pet. ref=d). 
Egregious harm is such harm that a defendant has not had a fair and
impartial trial.  Almanza v. State,
686 S.W.2d 157, 171 (Tex. Crim. App. 1984).








Comments on
self-representation.  Appellant
compares the trial court=s comments regarding his
self-representation with the comments of the trial court in Blue v. State,
41 S.W.3d 129 (Tex. Crim. App. 2000).  In
Blue, the trial court told prospective jurors that (1) a trial delay was
due to the defendant=s attempt at making a plea bargain with
the state and the defendant=s prolonging the
negotiations, (2) the trial court would prefer the defendant to plead guilty,
and (3) there were reasons an innocent defendant might not testify, but, even
knowing she was guilty, defense counsel might put Sister Theresa on the stand
because nobody would believe she would lie. 
Id. at 130.  Although the
defendant did not object to the comments at trial, he complained of them on
appeal.  See id.  The intermediate court concluded the error
was waived because no contemporaneous objection was uttered; but the court of
criminal appeals reversed, holding that the error was outside the scope of Rule
33.1.  See id. at 130, 133. The
judges voting to reverse, however, did not agree on the rationale.   Four judges concluded the trial court=s comments tainted
the presumption of innocence and were fundamental error of constitutional
dimension.  See id. at 132
(opinion of Johnson, J.); see also Saldano v. State, 70 S.W.3d 873, 889 n.72 (Tex. Crim.
App. 2002) (explaining Blue).  A
fifth judge concluded the trial court=s comments violated
the right to an impartial judge.  See
Blue, 41 S.W.3d  at 138 (opinion of
Keasler, J.); see also Saldano, 70
S.W.3d at 889 n.72 (explaining Blue).

Because there is no majority opinion
in Blue, it is not binding precedent. 
See Pearson v. State, 994 S.W.2d 176, 177 n.3 (Tex. Crim. App.
1999).  Even if we were bound to follow the plurality
opinion in Blue, none of the trial court=s comments about
appellant=s self-representation rose to such a level
as to bear on the presumption of innocence or vitiate the impartiality of the
jury.  See Jasper v. State, 61
S.W.3d 413, 421 (Tex. Crim. App. 2001) (stating, even if court of criminal
appeals were bound to follow Blue plurality opinion, A[n]one of the
trial judge=s comments rose to such a level as to bear
on the presumption of innocence or vitiate the impartiality of the jury@).  Taken in context, the comments are comparable
to those in Saunders v. State, which the appellate court held Adid not ridicule,
or in any manner impugn Saunders= [sic] choice of
self-representation.@ 
721 S.W.2d 359, 364 (Tex. App.CTyler 1985, pet.
ref=d).[9]

We overrule
appellant=s third point of error.








Punishment range.  We also conclude the trial court=s unobjected-to
comments about the range of punishment did not rise to such a level as to bear
on the presumption of innocence or vitiate the impartiality of the jury.  The following passages are illustrative of
the manner in which the trial court explained how the punishment range might be
affected if a defendant had prior felony convictions:

THE COURT: 
Since 1974, which was the year that I started law school as a first-year
law student, in my criminal law course we had the very first edition of the
Texas Penal Code.  We=re now on the 20th edition.  The Legislature has changed it every other
year for the past 30 years, but the one thing the Legislature has never changed
in 30 years is the range of punishment for a person found guilty of a second
degree felony offense of robbery.

The range of punishment is a minimum of two years in
prison - - I=m going to put TDC; that=s the
old abbreviation for prison, and the Legislature has changed that.  It=s now
TDCJID.  Obviously, I prefer TDC, Texas
Department of Corrections.  And it=s up to 20 years in prison and a fine up to $10,000
may be assessed.

Additionally, for the last 30 years our law has
provided where it is shown during a punishment phase of a criminal trial that
an individual has one prior criminal felony conviction, the range of punishment
is increased from 2 years to 5 years in prison, the maximum increased from 20
years up to 99 years in prison or life in prison, and a fine up to $10,000 may
be assessed.

Additionally, for the last - - for the last 25 years
our law has provided that where it is shown in a punishment phase of trial an
individual has two prior felony convictions, the range of punishment is
increased from a minimum of 5 years in prison up to 25 years in prison up to 99
or years of life in prison.  There is no
fine.

We have this wide range of punishment in Texas for all
persons who are convicted of a second degree felony offense of robbery from a
minimum 2 years in prison up to a maximum of 20 years in prison and a $10,000
fine, because for the last 30 years the Legislature has clearly recognized
every individual is different, the facts of their cases are different, and
their backgrounds are different.








Some people found guilty of robbery get the minimum
punishment, some get the maximum punishment, everybody else gets somewhere in
between based upon whatever the jury decides to be the appropriate punishment
for that particular case taking into consideration the facts of the case and
the background of the defendant.  They
also clearly recognize there are some individuals that are found guilty of
aggravated robbery who have one prior felony conviction.  Some should get the minimum punishment of 5
years in prison, some should get the maximum, 99 or life.  Once again, everybody else gets somewhere in
between based upon whatever the jury decides to be the appropriate punishment
for that particular case, taking into consideration the facts of the case and
the background of the defendant.

They also clearly recognize that there are some
individuals who are found guilty of robbery who have two prior felony
convictions, some should get 25 years in prison, some should get the maximum,
99 years in prison.  Once again, everyone
else found guilty of robbery who has two prior felony convictions should get
somewhere in between, based upon whatever the jury decides to be the
appropriate punishment for that particular case taking into consideration the
facts of the case and the background of the defendant.

I=ve thrown a bunch of numbers at y=all.  Does
anybody have any questions about the range of punishment for a person found
guilty of the offense of robbery?

. . .

VENIREPERSON: Will it be given to the jury prior to
reaching punishment if there is a guilty verdict whether there are any prior
convictions or not?

THE COURT:   No,
sir.  It=s not
relevant.

. . .

What I want to know now is this: Is there anybody on
the jury panel who could not consider the entire range of punishment for a
person found guilty of the offense of robbery from a minimum of two years in
prison up to the maximum 20 years in prison, or if he has one prior conviction
from a minimum of 5 years in prison, a maximum up to 99 years in prison or
life.  If he has two prior, minimum 25
years in prison up to maximum of 99 years in prison or life in prison?

. . .

All right. 
There may be some of y=all out there thinking it=s maybe a little unfair question since I don=t know what the facts of this case are, I don=t know what Mr. Ganther=s
background is, how could I possibly answer that question?  That=s the very
point of my question.  I=m not talking to y=all
about this case.  I know you don=t know what this case is about.  I know you don=t know
what his background is, because I=m
talking to y=all about every case.








In every case in Texas where a person is found guilty
of the felony offense of robbery, each side, the State of Texas and the
defendant is entitled to have a jury that can consider the entire range of
punishment from the minimum punishment to the maximum punishment.

 

Thus, the trial
court explained it was not talking about the facts of this case, but was
inquiring whether the venire members could consider the full range of
punishment that might be presented to them. 
The trial court=s inquiry was a permissible inquiry.  See Bevill v. State, 573 S.W.2d 781,
783 (Tex. Crim. App. 1978) (stating, when jury may be called upon to assess
punishment, both State and defendant have right to qualify jury on full range
of punishment); Martinez v. State, 588 S.W.2d 954, 956B57 (Tex. Crim.
App. 1979) (holding that admonition of Code of Criminal Procedure Article
36.01, section 1Cthat, unless otherwise excepted,
allegations of prior convictions for purpose of enhancement shall not be read
to jury until punishment hearingCis not offended by
either State or accused informing and qualifying prospective jurors as to full
range of punishment applicable to enhanced offense, in order intelligently to
exercise peremptory challenges); see also Bowman v. State, 782 S.W.2d
933, 937B38 (Tex. App.CHouston [14th
Dist.] 1989, pet. ref=d) (overruling unpreserved point of error
regarding prosecutor=s use of Athe@ defendant,@rather than Aa@ defendant in
discussing effect of prior convictions on penalty range).[10]

We overrule
appellant=s fourth point of error.








Conclusion

Having overruled
appellant=s four points of error, we affirm the
judgment of conviction.

 

 

 

 

                                                               
/s/   John S. Anderson

Justice

 

 

 

 

Judgment rendered
and Opinion filed February 7, 2006.

Panel consists of
Chief Justice Hedges and Justices Yates and Anderson.

Publish C Tex. R. App. P. 47.2(b).

 











[1]  See Tex. Pen. Code Ann. ' 29.02 (Vernon 2003).





[2]  Because of the
nature of appellant=s issues, it is unnecessary to set forth the facts and
circumstances surrounding the offense with which he was charged.





[3]  The letter and
motion apparently were mailed February 4, 2004, but not filed with the court
until February 9, 2004.





[4]  The record
also contains a second pro se ANotice@ filed the same day, in which appellant again
represents, he Ahas previously prepared all pre-trial motions and had
counsel to sign them and filed them.@ 





[5]  Unlike the
inquiry in Collier, the inquiry in the present case does not include an
explanation of the charge and the possible range of punishment.  See Collier v. State, 959
S.W.2d 621, 626 (Tex. Crim. App. 1997). 
In one of his motions, however, appellant characterized himself as Afac[ing] 25 years to 99 years if convicted.@  Although
appellant did not correctly describe the range of punishment, he clearly
understood the gravity of the charge.  We
also note, during the colloquy with the trial court, appellant may have
attempted to condition his request to proceed pro se on availability of
co-counsel.  At that point, the trial
court emphasized it would not permit stand-by counsel, appellant reiterated he
wanted to represent himself.  See
Scarbrough v. State, 777 S.W.2d 83, 93 (Tex. Crim. App. 1989) (stating
request to proceed pro se is equivocal if made conditional on availability of
selective aid of counsel).  Finally, we
disagree with appellant=s suggestion that the non-open ended nature of the
trial court=s questioning rendered appellant=s waiver invalid. 
In the present case, appellant, in his motions and letters to the court
made it eminently clear he understood he would be held to the same standards as
counsel.





[6]  We do not have
a reporter=s record of the conference at which the trial court
first informed appellant he could have stand-by counsel.





[7]  Appellant
quotes extensive passages from the trial court=s voir
dire.  We have included only those
passages he has emphasized.  His argument
centers on the first and fourth passages cited above.





[8]  As with the
comments on self-representation, we quote only the portions appellant has
emphasized.





[9]  Among other
matters, the trial court in Saunders informed the jury:

 

AI have advised Mr. Saunders, as I have always advised
persons who have come before me and asked or insisted upon their rights to
represent themselves, that the course of action they have taken is dangerous,
and is ill-advised, and that they should not do so.  I have used, in admonishing Mr. Saunders, the
example which I always use in those instances, and that is, that the
Constitution probably gives oneself the right to do brain surgery upon
yourself, if you elected to do so, but that it is not sound medical practice to
attempt to perform brain surgery on oneself.@

 

Saunders v. State, 721 S.W.2d 359, 364 (Tex. App.CTyler 1985, pet. ref=d).





[10]  Appellant
contends his case is Acontroll[ed]@ by Clark
v. State, 878 S.W.2d 224 (Tex. App.CDallas
1994, no pet.).  In addition to not being
controlling authority for this court, Clark is distinguishable.  In Clark, the trial court stated the
allegations in the enhancement paragraphs meant the defendant had previously
been convicted of two felony offenses.  See
id. at 225.  Moreover, in Clark,
defense counsel objected to the comment at issue.  See id.















 [AH1]Both brief say
Feb. 4 not 9.