In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00150-CR
______________________________


CRAIG RICHARD WOODS, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 188th Judicial District Court
Gregg County, Texas
Trial Court No. 31824-A


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

            For the months December 2003 through April 2004, Craig Richard Woods failed to make
child support payments he had been ordered to pay.


 At his jury trial on five counts of criminal
nonsupport,


 Woods asserted, but the jury rejected, the affirmative defense that he was unable to pay
those child support payments.


 On appeal, Woods challenges the legal and factual sufficiency of the
evidence to support the jury's rejection of this affirmative defense. He also seeks various
reformations to the judgment.
            We affirm the judgment of the trial court because we hold that (1) the evidence is legally
sufficient to support the jury's rejection of the affirmative defense, and (2) the evidence is factually
sufficient to support the same; but we reform the judgment because (3) the judgment should be
reformed to be congruent with the record.
            An individual commits an offense if he or she intentionally or knowingly fails to provide
support for the individual's child younger than eighteen years of age, or for the individual's child who
is the subject of a court order requiring the individual to support the child. Tex. Pen. Code Ann.
§ 25.05(a). It is an affirmative defense to prosecution under Section 25.05(b) that the actor could
not provide support for the actor's child. Tex. Pen. Code Ann. § 25.05(d); Lyons v. State, 835
S.W.2d 715, 719 (Tex. App.—Texarkana 1992, pet. ref'd). A defendant bears the burden of proving
an affirmative defense by a preponderance of the evidence. Howard v. State, 145 S.W.3d 327, 329
(Tex. App.—Fort Worth 2004, no pet.).
(1)       The Evidence Is Legally Sufficient To Support the Jury's Rejection of the Affirmative Defense
            Generally, the burden of proof dictates the standard of review. Zuniga v. State, 144 S.W.3d
477, 484 (Tex. Crim. App. 2004); Ballard v. State, 161 S.W.3d 269, 270–71 (Tex. App.—Texarkana
2005, pet. granted). Under the Sterner standard of review,


 an appellant challenging the legal
sufficiency of the evidence to support an adverse answer on which he or she had the burden of proof
must satisfy two inquiries. See Sterner, 767 S.W.2d at 690. First, the reviewing court must examine
the record for evidence that supports the finding, while ignoring all evidence to the contrary. See id. 
Second, if there is no evidence to support the finding, then the reviewing court must examine the
entire record to see if the contrary proposition is established as a matter of law. See id.; Cooks v.
State, 169 S.W.3d 288, 290–91 (Tex. App.—Texarkana 2005, pet. ref'd). The finding at issue here
is the jury's rejection of the affirmative defense that Woods was unable to provide support. So, we
go to the record to search for evidence to support the jury's implied rejection of the affirmative
defense.
            We find evidence supporting the jury's finding in Woods' own testimony that, during the five
months alleged, although formally unemployed, he "found anything [he] could do just to pay bills." 
In terms of the physical ability to perform work, we look to the portion of the record where Woods
testified that, during the relevant months, he was trying to work "at least half a day or more." He
concedes he "was not an invalid." He explained again that it was not a matter of not being entirely
unable to work: "I'm not saying I was an invalid during that time period, but I was out of a job and
looking for work." From Woods' testimony, it appears that he was working to some extent during
the relevant months even though not formally employed and that, despite generating some income,
made no payment in support of his children. At a minimum, he indicates he was able to work.
            With respect to the notion that Woods was unable to secure employment, the evidence
showed he was eligible for rehiring by a previous employer. The record shows that, in October 2003,
Woods voluntarily left his job at DXP Enterprises to take another job. At the time Woods quit the
job at DXP, he was earning $13.50 per hour. Woods' former employer at DXP testified Woods was
eligible for rehire through 2003 and at least the first six months of 2004. This time frame
encompasses the months for which Woods was convicted. Woods was involuntarily terminated after
less than a month at the job subsequent to his job at DXP, leaving him unemployed during the
months in which he was eligible for rehire at DXP. However, the record does not show that Woods
sought to be rehired at DXP. Further, Woods testified he was fairly well educated in his field and
possessed the skills necessary to work as a subcontractor or as a mechanic. 
            Ignoring any evidence contrary to the jury's implicit rejection of the affirmative defense, we
conclude that the record supplies legally sufficient evidence to support the jury's implied finding that
Woods was not unable to work and provide support for his children during the months alleged. 
Having so concluded, we need not continue to the second prong of the Sterner standard. See
Howard, 145 S.W.3d at 335. We conclude the evidence is legally sufficient to support the jury's
finding.
(2)       The Evidence Is Factually Sufficient to Support the Jury's Rejection of the Affirmative
Defense

            Woods admits he made no payments in support of his children for the months alleged. He
argues, however, that the evidence established he was unable to provide support for his children
during the relevant time periods. Again, by finding Woods guilty of all counts of nonsupport, the
jury implicitly rejected Woods' affirmative defense. We now measure the factual sufficiency of the
evidence to support the jury's rejection.
            The proper standard for reviewing factual sufficiency where the law dictates that the
defendant has the burden of proof by a preponderance of the evidence is whether, after considering
all the evidence relevant to the issue at hand, the judgment is so against the great weight and
preponderance of the evidence as to be manifestly unjust. See Zuniga, 144 S.W.3d at 482; Meraz
v. State, 785 S.W.2d 146, 154–55 (Tex. Crim. App. 1990); Cooks, 169 S.W.3d at 291. 
            Woods relies heavily on the position that the March 2003 accident resulted in injuries that
rendered him unable to work. From his testimony, it appears that he did sustain significant injuries
in the accident.


 He explains that he crushed two vertebrae in his neck and suffered a collapsed disk
in his back. He underwent surgery for these injuries and testified that this surgery "put [him] out of
work for about nine months." Assuming that Woods was able to work after this nine-month period,
we note that such calculations result in the conclusion that Woods was able to work, at the latest and
according to his own testimony, sometime around December 2003, the first month for which Woods
was convicted. This time frame is somewhat consistent with Woods' later assertion that he was able
to work at least half a day starting sometime around January or February. This evidence does not
support a conclusion that the accident rendered him unable to work for the five relevant months.
            Woods also testified his doctor ordered him not to work at all for three months following the
accident.


 This evidence, taken as true, establishes only that Woods was unable to work for the three
months following the accident, a time period that preceded the time period for which Woods was
convicted. That is, even if the jury did believe that the accident in March 2003 rendered Woods
unable to work and, thus, provide support, the three months for which Woods testified he was
ordered not to work had passed before the months the State alleged in its indictment. Therefore, this
evidence also fails to establish the affirmative defense for the relevant time period.
            Woods attempted to explain the whereabouts of the fairly substantial severance payment that
he received when he was laid off at TXU in March 2000. First, he noted that the amount he
received, after deductions, was approximately $30,000.00 rather than the $47,000.00 that the State
claimed. By December 2003, it appears nothing remained of the severance package money. Woods
explained he had to pay for fairly substantial legal fees that had accumulated over the previous year. 
The record supports this assertion by showing that, within a four-year period, Barbara had filed some
seventeen motions for contempt relating to their divorce and child custody, which often resulted in
Woods' being ordered to pay Barbara's legal fees. Woods also had gone through a third divorce with
another woman. So, Woods testified, he was having to support this ex-wife in the pendency of that
divorce and also provide a household for himself. For these reasons, the money he received in
March 2000 had been exhausted and was not available as a source of child support payments after
nearly four years, several legal proceedings, and another divorce. 
            As discussed, the State presented evidence through a former employer that Woods was
eligible for rehire during the relevant months. The record shows that Woods' last formal
employment was terminated in November 2002, at which point he was eligible to seek to be rehired
by this former employer. Again, there is no evidence that Woods pursued such employment
possibility. Such evidence supports the jury's implied conclusion that Woods was able to provide
support.
            The record also shows that Woods sought financial assistance from the government,
including unemployment compensation. While not providing Woods the income he received when
he worked at TXU, these possible sources of income could have provided him some financial
resources from which he could have paid support. See Howard, 245 S.W.3d at 335. Taken with the
evidence that Woods borrowed and earned money, this evidence provides some evidence Woods
either did, or could have, had some additional money at his disposal.
            Barbara also suggested that Woods had several vehicles he could have liquidated to provide
support for the children and, in that same vein, the State pointed out that, during the months at issue,
Woods was riding a Harley-Davidson motorcycle. The record shows that the 1993 Ford Bronco was
totaled in the March 2003 accident and that Woods drove the motorcycle—purchased in 1997—as
his primary vehicle. The remaining vehicles were late-model "junkers," as Woods described them,
purchased before his marriage to Barbara. The record suggests that the motorcycle was Woods' only
form of transportation after the accident and was not, as the State suggested, a sign of wealth and
indulgence. So, the record does not show that Woods owned a great deal of assets with which he
could have raised the money for child support payments. However, Woods testified he had
borrowed some money from a friend and signed his motorcycle over to the friend as collateral,
providing at least some income.


 
            The Fort Worth Court of Appeals examined similar evidence in a similar context. See id. 
at 335–36. The evidence showed that Howard received social security income and anywhere from
$600.00 to $1,000.00 per month from rental property. Id. at 335. The record also showed that
Howard had settled a lawsuit against an employer for $43,000.00 and performed odd jobs for cash. 
Id. Such evidence was legally sufficient. When the court examined all relevant evidence, it also
pointed out evidence that supported Howard's assertion of inability to provide support. Id. at 336. 
There was evidence that Howard was illiterate and had been incarcerated for two years. Id. He also
introduced documentary evidence supporting his claim of disability. Id. Nonetheless, Howard's
evidence was not of such great weight that the jury's rejection of his defense was manifestly unjust. 
Id. at 337. The court measured such evidence in light of evidence of Howard's income, his ability
to perform some work, and the fact that he had supported his son in the past while the mother was
in jail. The court concluded that the evidence was factually sufficient to support the jury's implicit
rejection of Howard's defense. Id.
            Here, Woods admits he did not make any payments during the relevant months of December
2003 and January, February, March, and April 2004, leaving only the issue of whether he was able
to provide support for the children during those months. In reviewing the factual sufficiency of the
evidence, we must not substitute our judgment in the place of the jury's verdict. See Meraz, 785
S.W.2d at 154. The record, through evidence that Woods was physically able to work, was eligible
to be rehired, retained marketable skills and education, and had actually been performing some
handyman work, provides support for the jury's rejection of the notion that Woods was unable to
provide support. While the record here, as in Howard, provides evidence on each side of the issue
concerning the affirmative defense, after considering all the evidence relevant to Woods' ability to
support his children during the five months alleged, we cannot say that the jury's rejection of the
affirmative defense is against the great weight and preponderance of the evidence.
(3)       The Judgment Should Be Reformed to Reflect the Dates of the Offenses for Which Woods
Was Convicted and Date on Which Sentence Was Imposed
            Woods contends, and the State concedes in large part, that the trial court's judgment should
be corrected. After the jury returned its verdict June 29, 2005, the trial court postponed sentencing
until July 13 so that it could get a presentence investigation report and consider the issues concerning
community supervision in light of the fact that Woods had withdrawn his application for community
supervision and wished, instead, to serve the remainder of his sentence. The trial court orally
pronounced judgment against Woods July 13, 2005, and ordered Woods to serve the remaining two
weeks of his sentence. 
            The trial court signed its original order June 29. The original judgment showed that Woods
had served 336 days of his one-year sentence. The trial court later signed its judgment nunc pro tunc,
which reflected that Woods had served 350 days of his sentence. This corrected judgment shows
to also have been signed and filed June 29. It does, however, show that sentence was to commence 
July 13, the date sentence was pronounced. It shows only an offense date of "December 3rd, 2003." 
As to the formal announcement of each count for which Woods was convicted, the judgment is silent
as to the dates of each offense. 
            Woods now requests that we reform the trial court's judgment in three aspects. First, he asks
that we reform the judgment to reflect time credited as 350 days. Second, he asks that we reform
the judgment to show the dates of each offense as alleged in the indictment. Finally, he asks that we
reform the judgment to reflect that it was entered and filed July 13, rather than June 29. The State
points out that the corrected judgment does, in fact, reflect the requested number of days credited,
but expressly does not object to any of the other proposed changes in the trial court's judgment.
            We have the authority to reform the trial court's judgment under certain circumstances. See
Tex. R. App. P. 43.2(b). We exercise such authority only when the proper action to be taken is
clearly indicated and does not involve an act of judicial discretion. An appellate court may correct
and reform a trial court judgment to make the judgment congruent with the record. Nelson v. State,
149 S.W.3d 206, 213 (Tex. App.—Fort Worth 2004, no pet.); Nolan v. State, 39 S.W.3d 697, 698
(Tex. App.—Houston [1st Dist.] 2001, no pet.). Since we have all information and evidence
necessary for reformation on these matters, we may reform the judgment and sentence on appeal. 
See Brewer v. State, 572 S.W.2d 719 (Tex. Crim. App. 1978); Graham v. State, 693 S.W.2d 29, 31
(Tex. App.—Houston [14th Dist.] 1985, no pet.).
            First, we look to the issue of reforming the trial court's judgment to reflect the dates of each
of the five offenses. Woods requests that we modify the judgment to reflect those dates as alleged
in the indictment and as found in the jury's verdict.
            "The judgment shall reflect . . . the date of the offense or offenses" for which the defendant
was convicted. See Tex. Code Crim. Proc. Ann. art. 42.01, § 1(14) (Vernon Supp. 2005). In this
respect, the trial court's judgment should be reformed. Woods does not contend that the evidence
was insufficient to prove the dates alleged. Rather, he simply requests that we reform the judgment
to mirror the dates as alleged in the indictment. Here, the record clearly shows the dates of the
offenses for which Woods was convicted. In its verdict, the jury found Woods guilty of five offenses
as alleged in the indictment. The State alleged five counts of criminal nonsupport, occurring on
December 1, 2003; January 1, 2004; February 1, 2004; March 1, 2004; and April 1, 2004,
respectively. The record is clear on this issue and, accordingly, we reform the judgment to reflect
the dates of the offense for which Woods was convicted as those dates alleged in the indictment. 
            The judgment properly indicates a sentencing date of July 13, 2005. It is from this date that
we calculated the applicable appellate timetables. While we do not think such reformation is
necessary at this juncture to protect any of Woods' rights, we note that the State concedes the issue. 
So, to the extent that the judgment does not already reflect a sentencing date of July 13, 2005, we
reform the judgment to reflect that the judgment was entered against Woods July 13, 2005.
            Woods contends we should reform the trial court's judgment to show that Woods was
credited 350 days served toward his one-year sentence. However, the trial court's corrected judgment
clearly does this. Therefore, Woods' issue concerning the reformation of the judgment in terms of
the amount of time served is moot.
            We reform the judgment of the trial court to reflect the dates of Counts I through V as
follows: December 1, 2003; January 1, 2004; February 1, 2004; March 1, 2004; and April 1, 2004,
respectively.  Further,  we  reform  the  judgment  to  reflect  that  the  date  judgment  was  entered
was July 13, 2005, the day on which the trial court orally pronounced sentence against Woods. 
 
 
 
Having concluded that the evidence was legally and factually sufficient to support the jury's verdict,
we affirm the trial court's judgment, as reformed.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          March 2, 2006
Date Decided:             May 23, 2006

Do Not Publish