Larry Darnell ALLEN, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–06–00294–CR.

Court of Appeals of Texas,
Waco.

Aug. 22, 2007.

Bill R. Turner, Brazos County Dist. Atty., Douglas Howell, III, Brazos County Asst. Dist. Atty., Bryan, for appellant.

Richard E. Wetzel, Austin, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

A jury found Appellant Larry Darnell Allen guilty of possession of cocaine (one gram or more and less than four grams) with intent to deliver. Finding two enhancement paragraphs to be true, the jury then assessed punishment at 75 years in prison. Allen appeals, raising three issues. We will affirm on guilt but reverse and remand for a new punishment hearing.

### Background

Blake Vincent, a deputy constable, pulled over Allen at night for failure to dim his high beams. After watching Allen engage in various furtive gestures that Vincent thought could be to retrieve a weapon, Vincent handcuffed Allen and began a sweep of the car for weapons. A civilian rider with Vincent informed him that Allen was trying to get something out of his pocket, so Vincent searched Allen's pocket and found marihuana. Vincent returned to the car and found a pill bottle containing six rocks of suspected crack cocaine.

### Self–Representation

In his first issue, Allen alleges that he did not knowingly, voluntarily, or intelligently waive his right to representation by counsel. Specifically, Allen claims that the record does not show that the trial court sufficiently made him aware of the dangers and disadvantages of self-representation.

At docket call about a week before trial began, Allen complained about his appointed attorney (Earl Gray), demanding the issuance of subpoenas for character witnesses and the right to cross-examine the State's witnesses by himself. The trial court then informed Allen that he had a right to represent himself and a right to an appointed attorney, but he did not have a right to hybrid representation. Allen responded: "I'm cross-examining. Period." After a recess during which Allen and his appointed attorney discussed the matter, the attorney informed the trial court that, despite his advice that Allen let the attorney represent him, Allen had chosen to represent himself with the attorney acting as "standby" counsel. The trial court then admonished Allen:

> If for some reason, Mr. Allen, you decide after all that you want Mr. Gray to handle your case, you just let the Court know. Either way, you have the right to do it or you can have him do it. If you want him standing by giving you advice, that's fine also. It makes no difference to me. I will caution you, though, that it's often difficult for a person who is not a lawyer to represent themselves because I have to hold you to the same rules of evidence as I do a

lawyer. You're not going to be well-trained in that because you just haven't had the experience. And granted, if you have standby counsel, you can lean next to him and say, "What do I need to do" and have a private conversation, but it's sometimes difficult to do that. But it's your decision.

Allen's appointed attorney then questioned him:

Q. Mr. Allen, you understand that my recommendation to you is that you allow me to represent you wholly. Do you understand that?

A. Yes, sir.

Q. But it's your decision. You understand the risks that are involved in representing yourself, even with me assisting?

A. Yes, sir, I do.

Several days later, at another docket call and with Gray present, the trial court informed the parties when jury selection would begin. Gray interacted with the trial court at that docket call and then put on the record that he had given Allen a trial manual and "cheat sheets." Upon being questioned on the record, Allen reiterated that he still wanted to represent himself.

The next day, before jury selection began, on the record the trial court insured that Allen understood the charges against him and still wanted to represent himself. Upon Allen's assertion that he did, the trial court admonished him again:

There are certain risks associated with representing yourself. I can't favor somebody or bend the rules for somebody who is representing themselves just because they're not a lawyer. I have to follow all the rules of procedure and all the laws that govern the case. Do you understand that?

Allen responded affirmatively, and the trial court indicated again that Gray would

be standby counsel. The trial court then proceeded on the record to instruct Allen on how to use his standby counsel and how jury selection and the trial would proceed, insuring at every step that Allen understood the trial court's instructions. Allen said he had been in a jury trial previously and that he was familiar with the process. Specifically, the trial court insured that Allen understood the following: the State's right to proceed first because it has the burden of proof; motions in limine (which Gray had filed); the enhancement paragraphs and their effect on the minimum punishment; the order of the trial and the burden of proof; proper and improper impeachment; punishment phase evidence; and the right to a suppression hearing. Upon being questioned again on the record after the above issues had been discussed, Allen still wanted to represent himself.

In *Manley v. State*, we stated:

The Sixth Amendment to the United States Constitution and Article 1, Section 10 of the Texas Constitution provide that a defendant in a criminal trial has the right to assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. However, this right to counsel may be waived, and the defendant may choose to represent himself at trial. *Faretta v. California*, 422 U.S. 806, 821, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562 (1975). Although the right to self-representation is absolute, a waiver of the right to counsel will not be "lightly inferred," and the courts will indulge every reasonable presumption against the validity of such a waiver. *George v. State*, 9 S.W.3d 234, 236 (Tex.App.-Texarkana 1999, no pet.) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), and *Jordan v. State*, 571 S.W.2d 883, 884 (Tex.Crim. App.1978)).

How does a court decide whether a valid waiver of counsel exists? *Faretta* requires that (1) the appellant make a "knowing and intelligent" waiver; and (2) the appellant must be made aware of the "dangers and disadvantages of self-representation." *Id.* (citing Tex.Code Crim. Proc. Ann. art. 1.051 (Vernon Supp.1999)); *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541. To decide whether a defendant's waiver is knowing and intelligent, the court must make an inquiry, evidenced by the record, which shows that the defendant has sufficient intelligence to demonstrate a capacity to waive his right to counsel and the ability to appreciate the practical disadvantage he will confront in representing himself. *George*, 9 S.W.3d at 237 (citing *Archie v. State*, 799 S.W.2d 340, 344 (Tex.App.-Houston [14th Dist.] 1990), *aff'd*, 816 S.W.2d 424 (Tex.Crim.App.1991)). The court must determine not only that the defendant wishes to waive his right to counsel, but that he understands the consequences of such waiver. *Id.*

Although it is not mandatory that the warnings be given in writing, we have previously held that the record must show that the defendant understands the consequences of his waiver. *Goffney v. State*, 812 S.W.2d 351, 352 (Tex.App.-Waco 1991), *aff'd*, 843 S.W.2d 583 (Tex.Crim.App.1992). It is not enough that the record show conclusions by the trial court that the defendant is aware of the dangers and disadvantages of self-representation.

*Manley v. State*, 23 S.W.3d 172, 173–74 (Tex.App.-Waco 2000, pet. ref'd). A defendant's written waiver of the right to coun-

sel, while preferable, is not required. *Burgess v. State*, 816 S.W.2d 424, 431 (Tex. Crim.App.1991); *see also* Tex.Code Crim. Proc. Ann. art. 1.051(g) (Vernon 2005).

■ We hold that the record in this case sufficiently shows that, before any act of self-representation, Allen was made fully aware of the dangers and disadvantages of self-representation, that he understood the consequences of his waiver, and that his waiver was knowing and intelligent.[1] *See Cooks v. State*, 169 S.W.3d 288, 293–97 (Tex.App.-Texarkana 2005, pet. ref'd). We overrule Allen's first issue, but because the judgment incorrectly recites that Allen made a written waiver, and because we are remanding this cause for a new punishment hearing, we order the trial court to modify its judgment on remand to reflect that Allen waived his right to counsel orally in open court and on the record in the guilt-innocence phase.

### Hearsay

■ During Vincent's patdown search of Allen, he found a cell phone. It rang, and Vincent, disguising his voice, answered. Over Allen's hearsay objection, Vincent testified that a female caller asked, "Where are you?" Vincent responded, "Going to the jailhouse." The caller then said, "Well, where's my crack?" Vincent responded that it was going to the jailhouse too. The caller said, "I told you not to leave the damn house," and then asked what would happen to her car. Vincent told her it would be towed.

■ Allen's second issue asserts that the trial court abused its discretion in overruling his hearsay objection. We re-

---

1. Several courts have held that a trial court is not required by *Faretta* to admonish a defendant who has access to standby counsel appointed by the trial court. *See, e.g., Walker v. State*, 962 S.W.2d 124, 126–27 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd); *Robert-*

*son v. State*, 934 S.W.2d 861, 864 (Tex.App.-Houston [14th Dist.] 1996, no pet.). But because we hold that the record shows sufficient admonishment and a knowing and intelligent waiver, we need not consider that rule's application in this case.

view a trial court's ruling on the admissibility of evidence for abuse of discretion. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex.Crim.App.2005). "A trial court abuses its discretion when its decision is so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Id.*

At trial and on appeal, the State contends that the hearsay statement was admissible under the statement-against-interest exception to the hearsay rule: "A statement which was at the time of its making so far ... tended to subject the declarant to civil or criminal liability.... In criminal cases, a statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." TEX.R. EVID. 803(24). The determination on the admissibility of a statement in accordance with Rule 803(24) requires a two-step inquiry: First, the trial court must determine whether the statement in question tends to expose the declarant to criminal liability; and second, the trial court must determine if there are corroborating circumstances that clearly indicate the trustworthiness of the statement. *Bingham v. State*, 987 S.W.2d 54, 57 (Tex.Crim.App.1999).

We hold that the trial court did not abuse its discretion in admitting the hearsay statements under Rule 803(24). In this case, the corroboration came from Detective Boyett, who testified that, in his expert opinion, the amount of crack cocaine found in Allen's possession and the lack of drug paraphernalia were indicative of a drug seller rather than a drug buyer. With such corroboration, the declarant's statement ("where's my crack?"), which was intended for Allen, would tend to expose her to criminal liability as either a supplier or buyer of crack cocaine. We overrule issue two.

## Finality of Prior Conviction Used for Enhancement

■ The indictment alleged two enhancement paragraphs on two prior felony convictions. *See* TEX. PEN.CODE ANN. § 12.42(d) (Vernon Supp.2006). If the second previous conviction is for an offense that occurred after the first previous conviction became final, the punishment range is 25 to 99 years or life in prison. *Id.* The first enhancement paragraph alleged a 1986 Brazos County felony conviction for possession of a controlled substance, and the second enhancement paragraph alleged that, after the 1986 conviction was final, Allen was convicted of felony possession of a controlled substance. The pen packet for the 1986 conviction included a notice of appeal, but the State did not introduce any evidence of that conviction's finality.

Allen was charged with and found guilty of possession of cocaine (one gram or more and less than four grams) with intent to deliver, a second-degree felony with a punishment range of imprisonment between two and twenty years when there is no enhancement paragraph. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(c) (Vernon 2003); TEX. PEN.CODE ANN. § 12.33(a) (Vernon 2003). The trial court's punishment charge instructed the jury that, if it found both prior convictions to be true and if it found that Allen was "legally convicted" in the 1986 case "prior to the conviction, if any," in the 1994 case, the punishment range is 25 to 99 years or life in prison. The jury found both prior convictions true and assessed a 75–year prison sentence.

■ A prior conviction must be final before it can be used to enhance punishment. *Russell v. State*, 790 S.W.2d 655, 657 (Tex.Crim.App.1990). A conviction that has been appealed is not final until the appellate court has affirmed the con-

viction and issued its mandate. *Johnson v. State*, 784 S.W.2d 413, 414 (Tex.Crim. App.1990). By introducing evidence of the non-final nature of a prior conviction, the State must prove its finality to use it for enhancement. *Jones v. State*, 711 S.W.2d 634, 636 (Tex.Crim.App.1986), *overruled on other grounds by Bell v. State*, 994 S.W.2d 173, 175 (Tex.Crim.App.1999). The State failed to do this with the 1986 conviction, and it essentially concedes as much in its brief. We therefore turn to harm.

Allen cites us to *Russell*, where the Court of Criminal Appeals held that, when the State fails to meet its burden of proof on an enhancing conviction's finality, a "harmless error analysis should not be undertaken" and "the proper remedy is a reversal and remand." *Russell*, 790 S.W.2d at 656–57. The Court of Criminal Appeals recently re-affirmed *Russell* in *Fletcher v. State*, 214 S.W.3d 5, 8 (Tex. Crim.App.2007) ("In *Russell v. State*, we explained that '[a] harmless error analysis should not be undertaken when the State fails to meet its burden of proof.' "). The State does not address Allen's argument and reliance on *Russell*. Instead, the State urges us to find that the jury's 75–year sentence was proper because (1) the sentence is not unlawful, being within the permissible range of punishment with one valid enhancement paragraph under Penal Code section 12.42(b); [2] (2) Allen did not object to the trial court's erroneous en-

hancement instructions in the punishment charge and therefore must show egregious harm under *Almanza v. State*, 686 S.W.2d 157, 172 (Tex.Crim.App.1984) (op. on reh'g); and (3) Allen cannot show egregious harm on the 75–year sentence on the record in this case with consideration of the *Almanza* factors.[3]

The State directs us to two opinions in which harmless error analyses were done in cases where error occurred relating to the enhancement allegations or jury instructions. *See Holt v. State*, 899 S.W.2d 22, 23–25 (Tex.App.-Tyler 1995, no pet.); *Boone v. State*, No. 06–03–00250–CR, 2005 WL 598752, at *1–2 (Tex.App.-Texarkana Mar.16, 2005, pet. ref'd) (mem.op.) (not designated for publication). However, neither of those cases deals with the State's failure to prove the finality of an enhancing conviction; we thus find them distinguishable as being outside the rubric of *Russell*.

Were we to conduct a harmless error analysis, we would agree with the State, but we conclude that *Russell* governs this case because it concerns the State's failure to prove the finality of the 1986 enhancing conviction. Under *Russell*, the proper remedy is a reversal and remand for a new punishment hearing. *Russell*, 790 S.W.2d at 657; *see Fletcher*, 214 S.W.3d at 8; *see also Mikel v. State*, 167 S.W.3d 556, 560 (Tex.App.-Houston [14th Dist.] 2005, no

**2.** The State argues that because Allen does not complain of the validity of the second enhancing conviction (the 1994 conviction), it is valid to enhance the conviction to a first-degree felony with a punishment range of 5 to 99 years or life in prison. *See* TEX. PEN.CODE ANN. §§ 12.32(a), 12.42(b).

**3.** Specifically, the State argues that there was no other error in the charge; that Allen did not object to the admission of four pen packets; that there was evidence of Allen's many

positive drug screens for cocaine while on parole; that Allen had been to prison four times; that the State asked for a sentence between 50 and 60 years, while Allen asked for the minimum of 25 years; that in the 1994 conviction that served as the second enhancing conviction, Allen pled true to being a habitual offender; and that the 75–year sentence was considerably more remote from the correct minimum of five years and the incorrect minimum of 25 years.

pet.). Accordingly, we sustain Allen's third issue.

## Conclusion

We affirm the trial court's judgment on the jury's guilty verdict but order the trial court to modify the judgment on remand to reflect that Allen waived his right to counsel orally in open court and on the record in the guilt-innocence phase (and in the punishment phase on remand, unless Allen is represented by counsel in the new punishment hearing). Because we have found error affecting only punishment, we reverse and remand for a new punishment hearing. *See* TEX.CODE CRIM. PROC. ANN. art. 44.29(b) (Vernon 2006).

Chief Justice GRAY concurring and dissenting.

TOM GRAY, Chief Justice, concurring and dissenting.

In this case we must reconcile two lines of Court of Criminal Appeals' opinions. First is the line of cases which holds that if the State fails to meet its burden of proof to establish an enhancement allegation, "a harmless error analysis should not be undertaken." *Russell v. State,* 790 S.W.2d 655, 656 (Tex.Crim.App.1990). As Justice Vance notes, it appears to have been recently reaffirmed in *Fletcher v. State,* 214 S.W.3d 5, 8 (Tex.Crim.App.2007). The other line of cases is that "[e]xcept for certain federal constitutional errors labeled by the United States Supreme Court as 'structural,' no error, whether it relates to jurisdiction, voluntariness of a plea, or any other mandatory requirement, is categorically immune to a harmless error analysis." *Cain v. State,* 947 S.W.2d 262, 264 (Tex.Crim.App.1997). This line of cases has far more subsequent citations than the other and was also recently reaffirmed in

*Garrett v. State,* 220 S.W.3d 926, 931 (Tex. Crim.App.2007).

It appears to me that the resolution may depend upon the question. In *Fletcher,* the State argued that the appellate court could take judicial notice of its own mandate from another proceeding that would appear to make the judgment used for enhancement final. Taking judicial notice would result in holding there was no error in using the conviction for enhancement purposes. Judge Keasler, writing for a unanimous Court of Criminal Appeals, held that consistent with prior precedent, the court of appeals had erred by taking judicial notice of its mandate in another proceeding. *Fletcher v. State,* 214 S.W.3d 5, 8–9 (Tex.Crim.App.2007). The Court held, and rightly so, that "[i]f we allowed this practice, the State would essentially be relieved of its burden of proving the finality of an enhancement conviction at trial." *Id.* at 8. In its discussion of the potential for harm, the Court focused on whether the defendant was being deprived of the right to respond to the State's proof via introduction of the mandate to prove finality. The Court concluded "Fletcher's precise argument on remand is not important." *Id.* at 9. Thus, the Court of Criminal Appeals was holding that the defendant would be deprived of the right to contest the use of the enhancement finding if the appellate court could take judicial notice of something from another case, like a mandate, to prove finality of the conviction and then use that prior conviction for enhancement.

In the present case, however, the State is not arguing that we should use the enhancement finding. Rather, the State is arguing that we should conduct a harm analysis after throwing out the enhancement finding in its entirety on the premise

that it was not properly proven.[1] This appears to be an entirely reasonable position and one used by at least two other courts of appeals after *Russell* was decided. *Holt v. State*, 899 S.W.2d 22 (Tex. App.-Tyler 1995, no pet.); *Boone v. State*, No. 06–03–00250–CR, 2005 WL 598752 (Tex.App.-Texarkana, March 16, 2005, pet. ref'd) (not designated for publication). While these cases were not decided on the failure of the State to meet its burden of proof, both conducted a harm analysis after an enhancement finding was determined to be erroneous. In each case, the appellate court was able to conduct a meaningful harm analysis of the impact of the error on the judgment, *i.e.*, the sentence imposed. In each case, the error in the affirmative finding as it related to the enhancement allegation was determined to be harmless.

In the present case, the majority conducted a harm analysis and determined the error was harmless. But the majority also concluded it was bound by *Russell* and *Fletcher*. Because there is no discussion of the *Cain* to *Garrett* line of cases in *Fletcher*, and because the *Cain* line of cases has been more frequently cited and more recently reaffirmed, I would apply *Cain* and its progeny, conduct a harmless error analysis, hold the error is harmless in reliance on *Holt* and *Boone*, and affirm the conviction and punishment. Accordingly, I concur in the affirmance of the judgment of conviction but must respectfully dissent from the reversal for a new punishment hearing.

---

1. As the majority notes in footnotes 2 and 3, the proper range of punishment without the second enhancement is 5–99 years rather than 25–99 years. Allen was sentenced to 75 years.